**STATE, Plaintiff-Appellee, v. FARLEY, Defendant-Appellant.**

Ohio Appeals, Seventh District, Lake County.

No. 486.   Decided September 21, 1950.

Thomas H. Blakely, Pros. Atty., Oliver R. Marshall, Asst. Pros. Atty., Painesville, for plaintiff-appellee.

Richard J. Moriarty, Cleveland, Earl C. Pettersson, Painesville, for defendant-appellant.

## OPINION

By PHILLIPS, PJ.

John L. Kocevar, an inspector of the Enforcement Division of the Ohio State Liquor Department, filed an affidavit in the Municipal Court of Painesville, Ohio, charging, in case numbered 11101 on the docket thereof, that defendant-appellant, designated defendant in this opinion, "on or about the 9th day of July, 1949, at the Mounds Club, Chardon Road, in the County of Lake aforesaid, in the Township of Willoughby, Ohio, * * * did unlawfully keep a place where intoxicating liquors, to-wit: Rum and Cognac were then and there furnished by the said Thomas Farley in violation of §13195 GC, and against the peace and dignity of the State of Ohio."

The jury found defendant guilty as charged in such affidavit, and the trial judge entered judgment of conviction and sentence thereon, and overruled defendant's motion for a new trial.

By amended notice of appeal defendant appealed on questions of law from the judgment and order of the trial court "overruling defendant's motion for a new trial and imposing sentence upon said defendant."

By assigned grounds of error defendant contends that the trial judge erred to his prejudice in the admission of evidence over his objection; "in permitting the introduction of evidence objected to by the appellant; in not granting appellant's motion for a directed verdict at the end of appellee's testimony; in not sustaining the motion for a directed verdict for the reason that appellant was twice placed in jeopardy for the same offense; and in not directing a verdict for appellant at the close of all the testimony." Further, by assignment of errors, defendant urges that he was prevented from having a fair and impartial trial by reason of "misconduct on the part of the attorney for the state"; that the court erred "in his instructions to the jury at the time said jury requested further instruction," and "in his charge to the jury" made at the close of all the evidence; that he was prevented from having a fair and impartial trial by reason of "irregularity in the proceedings of the jury"; that "the verdict is not sustained by sufficient evidence" and "is contrary to law" and the "evidence"; that errors of law occurred "at the trial prejudicial to this appellant"; and that

there are "other errors apparent on the face of the record prejudicial to the appellant and by reason of which the appellant was prevented from having a fair trial."

Counsel for defendant argued orally or by brief only three of these assignments of error. However, in this opinion, we will dispose of all grounds of error assigned by defendant's counsel.

About 11:15 P. M. on July 19, 1949, agents of the Enforcement Division of the Board of Liquor Control, armed with a search warrant, entered the grounds of the Mounds Club, a private club chartered as such in January 1932, of which defendant was manager. After being barred from entering such club building for about fifteen minutes, during which time they heard the sound of breaking glass, such officers were admitted. After an exhaustive search of the club, during which approximately 700 persons were present, such officers found shot glasses, old fashioned glasses, water glasses, olives, cherries, lemon juice, grenadine, stirrers, pourers, mixers, and paraphernalia used in the mixing of various drinks, whiskey bottle corks, broken whiskey glasses; and on the back cocktail bar adjacent to the kitchen a bottle of cognac, and a bottle of rum approximately three quarters full; and sixteen bottles of wines in a locker in the basement of the club. The officers seized the foregoing, and then took defendant into custody.

Subsequently defendant was charged, tried, and found not guilty in the trial court of unlawfully having in his possession for sale intoxicating liquors, namely rum and cognac in violation of §6064-54 GC.

In order to understand the questions presented for our consideration and determination it is not necessary to refer to the evidence further than to say that the state contended, and introduced evidence to support its contention, that defendant had such intoxicating liquors in his possession for the purpose for which he was charged in the affidavit partially quoted supra and tried subsequently. Defendant contended, and introduced evidence to support his contention, that such liquors were in his possession for the sole purpose of use in the kitchen in the preparation of such delicacies as "Baked Alaska" and "Cherry Jubilee"; that the club had surrendered its license to sell intoxicating liquors and merely furnished non-intoxicating "set ups" for its members, who furnished and brought their own liquors to the club; and that the identical evidence was introduced upon the trial of the charge of which defendant was acquitted and the charge upon which he was convicted.

As stated in the factual statement of this opinion, defendant was acquitted of the charge lodged against him of having unlawfully in his possession for sale intoxicating liquors, namely rum and cognac, in violation of the provisions of §6064-54 GC, and found guilty later of the charge of unlawfully keeping a place where intoxicating liquors were furnished in violation of §13195 GC.

Defendant waived his right to rely on the claimed error that the trial judge erred to his prejudice in overruling his motion for a verdict to be directed in his favor because he had been placed in jeopardy twice for the same crime, when he accepted the ruling of the court and proceeded with his defense and introduced evidence in his own behalf. **Halkias, Appellee, v. Wilkoff Co., Appellant, 141 Oh St 139.**

We believe that the case of **Duvall v. State of Ohio, 111 Oh St 657,** disposes of defendant's contention that he was placed in jeopardy twice for the same offense, and accordingly entitled to have a verdict directed in his favor at the close of all the evidence.

"An acquittal of a defendant upon the charge of murder in the first degree, while attempting to perpetrate a robbery (under §12400 GC), is not a bar to a prosecution for the crime of robbery (under §12432 GC), even though committed upon the same person named in the former charge, and the robbery was a part of the same criminal act referred to in the indictment for murder.

"The doctrine of res adjudicata is not applicable where one is being tried for one of the substantive offenses embraced in a conspiracy to commit a robbery, and the former trial and acquittal was for another offense committed in pursuance of the same conspiracy, to-wit, murder in attempting to perpetrate a robbery, additional elements being necessary to establish the latter charge; the two are, therefore, separate and distinct offenses. (**Patterson v. State, 96 Oh St, 90,** 117 N. E., 169, L. R. A. 1918A, 583, approved and followed.)

"A conviction or acquittal upon one indictment is no bar to a subsequent conviction and sentence upon another, unless the evidence required to support a conviction upon one of them would have been sufficient to warrant a conviction upon the other. A single act may be an offense against two statutes; and if either statute requires proof of an additional fact, an acquittal of the offense requiring proof of the additional fact does not exempt the defendant from prosecution and punishment under the statute which does not require proof of such additional fact.

"'* * * 'While it is the right of every person not to be put

in jeopardy more than once for the same offense, the principle should be so applied as not to create an immunity for crimes which do not constitute the offenses for which the criminal has once been exposed to punishment.'" **Duvall v. State, 111 Oh St 657, 660.**

See also **Rappold v. State, 16 Oh Ap 229 at 234,** in which the court said:—

"We desire to make our position plain, and again state that the prosecution in the municipal court of Cincinnati for unlawfully possessing two drinks of whiskey cannot be used as a bar to the prosecution in the mayor's court of Milford for unlawfully keeping a place, but the record is admissible as tending to show that he did not so keep a place."

In the syllabi of that case the court said:—

"In a prosecution for unlawfully keeping a place where intoxicating liquors are sold, in violation of §13195 GC, the verified record of another court of competent jurisdiction, showing an acquittal of the defendant on a charge of selling liquor in violation of law, is competent evidence tending to show that defendant did not keep a place, as alleged in the affidavit, where the evidence of the selling of which the defendant was acquitted was of the same sale upon which was based the charge of keeping a place, and the exclusion of such evidence is reversible error.

"In such case the record of the former trial is not admissible although the prosecutions in both suits were based upon the same identical act, unless both suits are between the same parties."

We find no error prejudicial to defendant as urged in this assigned ground of error.

In his general charge the trial judge charged inter alia that:—

"The defendant in this case, however, denies that the rum and cognac found by the agents was illegally in his possession, but on the contrary has introduced testimony to show that the rum and cognac in issue was used by the chef for cooking purposes and was not used or served as a beverage or drink.

"The court instructs you that possession by a chef or cook of rum or cognac for use in the preparation of food and not for a beverage or drink is a lawful possession and no permit is required for that usage.

"If, in your deliberations, you find that the rum and cognac in issue in this case was in possession of the chef or cook for use as a food ingredient or preparation, and not to be used in any manner as a beverage or drink, then it will be your duty to return a verdict of not guilty to the charge."

Upon request made by the jury after retirement for further instructions the following colloquy was had between the trial judge, counsel and jury:—

"The Court: Have you selected a foreman?

"Foreman Evans: Yes, I have been selected as the foreman.

"The Court: Mr. Evans, I understand you have a question.

"Foreman Evans: Yes, the jury would like to have some further instructions on the legality of the liquor on the bar.

"The Court: Do I understand your question correctly, you want to know if the liquor all by itself standing on the bar is legal or illegal?

"Foreman Evans: That's right.

"The Court: I believe that was covered by the charge.

"Perhaps I can explain it by saying this: That in itself, without other surrounding circumstances, the liquor is not illegal.

"I will re-read to you one or two paragraphs from the charge which may clear up this question in your mind.

"One paragraph, I said this: 'In the prosecution of this case, I say to you, as a matter of law, that it is not necessary for the State to show an actual sale or an offer to sell. The operative words of the State law being 'to keep a place where intoxicating liquors are furnished in violation of law.'

"Also, I said this to you:

"'If, in your deliberations, you find that the rum and cognac in issue in this case was in possession of the chef or cook for use as food ingredient or preparation and not to be used in any manner as a beverage or drink, then it will be your duty to return a verdict of not guilty to the charge.'

"In other words, you are to consider all of the testimony, and a part of that for your consideration was the place where the liquor was found by the agents.

"Does that clear up your question? In other words, you will have to review in your mind in the jury room all of the testimony that has come in here for practically three days, and then from that determine whether this offense of furnishing has been committed.

"Juror Elia: Didn't Kocevar say that he found rum and cognac on the back bar?

"The Court: That is as I recall it.

"Mr. Pettersson: No—

"The Court: That is substantially correct, yes.

"Juror Elia: We have to go by that. If liquor is on the bar, it is illegal to have liquor on a back bar where no license is issued. Is that correct or incorrect?

"The Court: To refresh your memory again on these two paragraphs that I read to you: If you believe that it was

placed there by the chef and that it was in his custody and control, it was a legal usage.

"If, on the other hand, it is as the State contends, that it was there to furnish people who wanted to buy liquor, then it is illegal.

"Foreman Evans: I think that clears it up, does it not?

"Juror Stange: There was some question as to whether furnishing—whether that meant that he furnished, or that he gave it.

"The Court: 'Furnished' may be perhaps defined as to make available or to have it there if there was a demand for it. It isn't necessary for the State to prove a sale.

"Mr. Blakely: Would you read that part of the charge?

"The Court: I will reread the first paragraph again:

" 'In the prosecution of this case, I say to you as a matter of law, that it is not necessary for the State to show an actual sale or an offer to sell. The operative words of the State law being 'to keep a place where intoxicating liquors are furnished in violation of law.'

"Mr. Petersson: We'd further like the Court's charge in conjunction with the possession for cooking.

"The Court: I will read that again.

" 'If, in your deliberations, you find that the rum and cognac in issue in this case was in the possession of the chef or cook for use as food ingredient or preparation and not to be used in any manner as a beverage or drink, then it will be your duty to return a verdict of not guilty to the charge.'

"In order to arrive at that conclusion, you must review and consider all of the testimony that has gone in this case all through this trial.

"Any other questions, or is that still somewhat vague in your mind?

"It is for you to determine whether that liquor was there legally or illegally. The only way you can arrive at that conclusion is to consider all of the testimony that has been introduced here by the various witnesses, and the exhibits.

"Mr. Blakely: I ask that the jury be sent back.

"The Court: You may return to the jury room unless you have any further questions."

We lift defendant's contention of error with respect to the foregoing colloquy from his brief prepared by his counsel:—

"From the foregoing it is readily apparent that emphasis was placed by the trial Court upon the possession by the chef or cook of the rum and cognac for use as a food ingredient or preparation and we submit that this was an erroneous instruction and contend that it was contrary to law and that the jury should have been instructed solely that the posses-

sion of the rum and cognac and its use as a food ingredient was a lawful use. In other words, the issue to be presented to the jury should have been limited only to its consideration of whether or not the rum and cognac were in the club for use in the preparation of food or were in the club for service or furnishing to its members or guests. Nowhere in the law do we find any requirement that the rum and cognac used in the preparation of food should be in the possession of any particular individual be he a chef, waiter, or kitchen employee. It mattered not who had technical possession of the rum and cognac and it was erroneous for the Court to say to the jury that its possession was lawful only if it was found in the possession of the chef or cook.

"How important this instruction became is evidenced from the fact that upon the jury's return for further instructions the Court again emphasized the fact of possession of the rum or cognac by the chef or cook when he again said (Record Page 244) as follows:

" 'Also, I said this to you:

" 'If, in your deliberations, you find that the rum and cognac in issue in this case was in possession of the chef or cook for use as food ingredient or preparation . . .'

"Again the Court (Record Page 245) said as follows:

" 'In other words, you are to consider all of the testimony, and a part of that for your consideration was the place where the liquor was found by the agents.'

"From this the jury could readily infer that if the rum and cognac were found in a place other than the kitchen or in the pocket of the chef, that they might readily find and conclude that the rum and cognac were there for furnishing to the members and guests.

"Juror Elia inquired as set forth above as follows:

" 'Didn't Kocevar say that he found rum and cognac on the back bar?' "

And the Court's answer was:

" 'That is as I recall it.'

Again Juror Elia said as follows:

" 'We have to go by that. If liquor is on the bar, it is illegal to have liquor on a back bar where no license is issued. Is that correct or incorrect?' "

And the Court replied:

" 'To refresh your memory again on these two paragraphs that I read to you: If you believe that it was in his custody and control, it was a legal usage.

" 'If on the other hand, it is as the State contends, that it was there to furnish people who wanted to buy liquor, then it is illegal.'

"There is no question from the foregoing but that the jury were led to believe from the instructions given to them by the Court that possession by the chef or cook, actual and physical, was absolutely necessary before they could find that the rum and cognac were to be used in the preparation or in the service of food."

Studying the charge of the trial judge carefully in its entirety in the light of the admissions of defendant and the evidence, to which reference has been made, we do not believe that the trial judge erred to defendant's prejudice in the respects charged therein by defendant. We find no undue emphasis of any part thereof, nor any emphasis save and except the repetition of a portion thereof made at the request of defendant's counsel, of which even though such repetition did constitute error, which we do not hold, defendant can not complain since the claimed over-emphasis of which he complains was repeated at his request.

Considering all of the evidence, some of which has been quoted, we arrive at the conclusion that reasonable minds could reach different conclusions as to defendant's guilt or innocence of the charge lodged against him; that a question was presented for the determination of the jury, which frees the trial judge of the charge of having erred to defendant's prejudice in overruling his motion for a verdict to be directed in his favor made at the close of all the evidence, which in our opinion supported the verdict of the jury and the judgment of conviction entered by the trial judge thereon.

While defendant has not argued all of his assigned grounds of error, we have, except as noted hereafter, considered all of them, and find no error in any of them upon which we pass prejudicial to defendant in the respects urged therein.

Appellant's counsel has failed to call our attention to "other errors apparent on the face of the record prejudicial to the appellant and by reason of which the appellant was prevented from having a fair trial," as alleged as a ground of error, nor to comply in respect thereto with the provisions of Rule VII of this court that his briefs shall "contain a statement of the questions presented and a succinct statement of so much of the cause, referring to the pages of the record, as is necessary to show how the questions arose, together with a statement of the authorities relied upon." Accordingly we will not pass upon this assigned ground of error.

The judgment of the municipal court is affirmed.

NICHOLS, J, GRIFFITH, J, concur in judgment.